# UNITED STATES BANKRUPTCY COURT FOR THE
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | |
| **BARBARA SMITH JACKSON,** | **CASE NO. 07-01498-NPO** |
| **DEBTOR.** | **CHAPTER 13** |
| | |
| **BARBARA SMITH JACKSON** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. NO. 07-00095-NPO** |
| **PRIORITY TRUSTEES SERVICES OF MISSISSIPPI, L.L.C.; THE BANK OF NEW YORK TRUST COMPANY NA AS SUCCESSOR TO J.P. MORGAN CHASE BANK, NA AS TRUSTEE and MORRIS, SCHNEIDER & PRIOR, P.A. and J. PEYTON RANDOLPH, II, ESQ.** | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO LIFT AUTOMATIC STAY AND
## GRANTING COMPLAINT TO SET ASIDE FORECLOSURE SALE

On June 19, 2008, there came before the Court for trial (the "Trial") the following: (1) the Motion to Lift Automatic Stay (the "Stay Motion") (Dk. No. 28) filed by J. Peyton Randolph, II ("Randolph") and the Response to Motion to Lift Automatic Stay (the "Response to Stay Motion") (Dk. No. 31) filed by Barbara Smith Jackson (the "Debtor") in the above-referenced bankruptcy case; and (2) the Complaint to Set Aside Foreclosure Sale and for Damages (the "Complaint") (Adv. Dk. No. 1) filed by the Debtor, the Response to Complaint to Set Aside Foreclosure Sale and for Damages ("Randolph's Response to Complaint") (Adv. Dk. No. 4) filed by Randolph, and The Bank of New York Trust Company, N.A. as Successor in Interest to J.P. Morgan Chase Bank, N.A. as Trustee's Answer to Complaint ("The Bank of New York's Response to Complaint") (Adv. Dk. No.

9) filed in the above-referenced adversary proceeding (the "Adversary").[1] Having considered the testimony, exhibits, and arguments of counsel presented at Trial, the Court finds for the following reasons that the Stay Motion is not well taken and should be denied and that the Complaint is well taken and should be granted as set forth herein.[2]

## Jurisdiction

This Court has jurisdiction of the subject matter and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## Facts

1. In November 2004, the Debtor's mother, Ruth Smith ("Smith") died intestate.[3] At the time of her death, Smith owned certain real property located at 543 Yandell Road, Canton, Mississippi (the "Property"), subject to a Deed of Trust recorded in the land records of the Office of the Chancery Clerk of Madison County, Mississippi, in Book 1402, Page 900, in favor of The Bank of New York.[4] The Property is the family homestead.

---

[1] On January 15, 2008, the Court issued an order consolidating the Stay Motion and the Debtor's Response to Stay Motion with the Complaint for purposes of discovery and Trial (Dk. No. 43) (Adv. Dk. No. 14).

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[3] At the Trial, the Debtor testified that one of her siblings claims that Smith executed a will. However, as of the date of the Trial, no will had been produced or probated. Accordingly, the parties proceeded at Trial under the assumption that the Debtor's interest in the Property arises by virtue of intestate succession. *See* Aff. of Debtor, Ex. A to Resp. ("[M]y father passed away in July of 1995 without a written Will and my mother passed away without a written will in November 2004.").

[4] According to the Substitute Trustee's Deed (Tr. Ex. C), Smith executed a Deed of Trust in favor of Phillys E. Mays P.A., Phillys Mays Grayson, Attorney, Trustee, securing an indebtedness to Primary Residential Mortgage, Inc., dated March 25, 2002, and recorded in Book 1402, Page 900 of the Land Records of Madison County, Mississippi. (Continued to p. 3).

2. Upon Smith's death, title to the Property vested in her heirs at law, the Debtor and her siblings. The Debtor and certain of her siblings continued to reside on and to make the mortgage payments on the Property. Several years after Smith's death, they fell behind on the mortgage payments.

3. On May 16, 2007, the Debtor filed a voluntary petition pursuant to chapter 13 of the Bankruptcy Code (the "Bankruptcy Petition") (Dk. No. 1).[5]

4. On May 17, 2007, Priority Trustee Services of Mississippi, L.L.C. ("Priority") conducted a foreclosure sale of the Property. Randolph was the highest bidder, paying $37,000 for the Property. Randolph did not receive notice of the filing of the Bankruptcy Petition.[6] On June 27, 2007, a Substitute Trustee's Deed (Tr. Ex. C) conveying the Property to Randolph purportedly was

---

(Continued from p. 2). That Deed of Trust was assigned to The Bank of New York Trust Company N.A. as Successor to JPMorgan Chase Bank N.A. as Trustee, by instrument dated April 2, 2002, and recorded in the Office of the aforesaid Chancery Clerk in Book 1496, Page 139. The Bank of New York Trust Company N.A. as Successor to JPMorgan Chase Bank N.A. as Trustee, the legal holder of the said Deed of Trust and the Note secured thereby, substituted Priority Trustee Services of Mississippi, L.L.C. as Substitute Trustee therein, as authorized by the terms thereof, by instrument dated March 13, 2007, and recorded in Book 2171, Page 0705 of the records in the offices of the aforesaid Chancery Clerk.

[5] On Schedule D, the Debtor identified Homecomings Financial as the mortgagor of the Property (Dk. No. 7). The Revised Combined Pretrial Order (the "Pretrial Order") reflects that Homecomings Financial and GMAC ResCap are servicing agents for The Bank of New York as Successor to JP Morgan Chase Bank NA. (Pretrial Order, p. 9).

[6] As stated by the Debtor in the Pretrial Order, "Randolph had no knowledge - and there was no way for Plaintiff or her attorney to give Defendant Randolph knowledge - of the Plaintiff's bankruptcy filing; . . . ." (Pretrial Order, p. 3). That is, Randolph did not receive notice of the filing of the Bankruptcy Petition because he is not a creditor of the bankruptcy estate, and therefore, was unknown to the Debtor or her attorney. Nevertheless, consideration of the notice issue is irrelevant for purposes of this Memorandum Opinion and Order. *See* n. 11 herein.

filed in the land records of the Office of the Chancery Clerk of Madison County, Mississippi.[7]

5. On July 17, 2007, the Debtor's chapter 13 plan was confirmed (the "Plan") (Dk. No. 26). The Plan provides for cure of the accumulated mortgage arrearage through the date of the filing of the Bankruptcy Petition together with payment of the post-petition monthly mortgage payment. The testimony at Trial established that the Debtor generally has made her Plan payments when due for approximately one year.

6. On August 23, 2007, Randolph filed his Stay Motion seeking to have the automatic stay imposed by 11 U.S.C. § 362[8] terminated to allow him to take possession of the Property which he purportedly had purchased at the foreclosure sale.

7. On September 7, 2007, the Debtor filed her Response to Stay Motion alleging that the Stay Motion should be denied because the foreclosure sale was conducted in violation of the automatic stay imposed by virtue of § 362.

8. In addition, on September 14, 2007, the Debtor initiated this Adversary by filing the Complaint seeking to have the foreclosure sale set aside and declared invalid because the sale was conducted in violation of the automatic stay imposed by virtue of § 362.[9]

---

[7] The Substitute Trustee's Deed introduced into evidence at the Trial does not include any recording information. *See* Memorandum Opinion and Order at pp. 13 and 14.

[8] Hereinafter all code sections refer to the United States Bankruptcy Code located at Title 11 of the United States Code unless otherwise noted.

[9] In the Complaint, the Debtor also sought findings of civil contempt, compensatory and punitive damages, and attorney fees against The Bank of New York, Morris, Schneider & Prior ("MSP") and Priority. Following mediation, however, the Debtor entered into a settlement agreement with MSP and Priority with regard to those claims. A separate order approving that settlement agreement will be entered contemporaneously with the entry of the Final Judgment regarding this Memorandum Opinion and Order.

9. On January 15, 2008, the Court entered the Order Consolidating the Stay Motion and the Adversary (Dk. No. 43) (Adv. Dk. No. 14).

10. Subsequently, on May 20, 2008, Randolph filed a Motion for Summary Judgment (Adv. Dk. No. 21) contending that he was a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value pursuant to § 549(c), to which the Debtor filed her Response to the Motion for Summary Judgment (Adv. Dk. No. 25). Determining that § 549(c) was inapplicable under the circumstances, *see* Bustamante v. Cueva (In re Cueva), 371 F.3d 232 (5th Cir. 2004), the Court entered its Order Denying Motion for Summary Judgment (Adv. Dk. No. 28), and thereafter conducted the Trial. At Trial, the Debtor took the position that the foreclosure sale was conducted in violation of the automatic stay[10] and, accordingly, was invalid and should be set aside. On the other hand, Randolph took the position that even if the foreclosure sale was conducted in violation of the automatic stay, the Court should retroactively annul the automatic stay and validate the foreclosure sale, allowing him to retain title to the Property.

**Discussion**

**1.      Is the Property Included within Property of the Bankruptcy Estate?**

In the Pretrial Order, the parties identified as a legal issue to be tried at Trial, "Whether the

---

[10] Although the Debtor contends that the foreclosure sale was conducted in violation of § 362, she does not seek damages for any willful violation of automatic stay. As stated in footnote 9 herein, the Debtor resolved any claims for willful violation of the automatic stay against MSP and Priority through the parties' settlement agreement. Moreover, she stated in the Pretrial Order and at Trial that she would not assert any claim for sanctions, compensatory or punitive damages, or attorney fees or costs against "The Bank of New York . . . for allegedly knowing, willful, intentional, and malicious stay violation(s), or civil contempt as set forth in Plaintiff's Complaint; . . . ." (Pretrial Order, p. 9). She also declared in the Pretrial Order that she "has never, and does not now, seek any damages against Randolph due to 'willful' stay violations," (Pretrial Order, p. 4) and reiterated at Trial that she would not pursue such claims against Randolph.

property in question is considered property of the Plaintiff's Bankruptcy estate." (Pretrial Order, p. 9). In the Complaint, the Debtor identified the Property as real property in which she has a "legal, equitable and possessory interest." Complaint ¶ 12; *see also* Sch. A; Pretrial Order, p. 3. Moreover, the Debtor stated at Trial that she and other siblings have continued to live on the Property following Smith's death. Randolph conceded in the Pretrial Order and at Trial that the Debtor and some of her siblings continued to live on the Property. *See* Pretrial Order, p. 5.

Pursuant to § 541(a)(1), property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." The legislative history reflects that Congress intended the bankruptcy estate to include possessory interests. *See* S. Rep. No. 989, 95th Cong., 2d Sess. 82-83 (1978); In re St. Clair, 251 B.R. 660, 665 (D.N.J. 2000) ("[A] possessory interest in real property is within the ambit of the estate in bankruptcy under Section 541, and thus the protection of the automatic stay of Section 362."); *see also* Brown v. Chesnut (In re Chesnut), 422 F.3d 298 (5th Cir. 2005) (creditor violates automatic stay if, without permission of bankruptcy court, he forecloses on an asset to which the debtor has only an arguable claim of right).

State law determines whether the Debtor has an interest in the Property. In re St. Clair, 251 B.R. at 665. Mississippi Code Annotated Section 91-1-3 provides:

> When any person shall die seized of any estate of inheritance in lands, tenements, and hereditaments not devised, the same shall descend to his or her children, and their descendants, in equal parts, the descendants of the deceased child or grandchild to take the share of the deceased parent in equal parts among them.

Miss. Code Ann. § 91-1-3 (1972, as amended). Therefore, assuming that Smith died intestate, the Property passed to her children, including the Debtor, and they continued to live on and possess the Property. *See* n. 3 herein. As such, the Debtor had a possessory interest in and arguable claim to the Property.

**2.      Was the Post-Petition Foreclosure Sale Conducted in Violation of the Automatic Stay?**

Pursuant to § 362(a), the filing of her Bankruptcy Petition operated as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 362(a)(3). Thus, the foreclosure sale, conducted the day after the filing of the Bankruptcy Petition, constituted an act "to obtain possession of property of the estate" in violation of § 362. This point is valid regardless of whether The Bank of New York, MSP, Priority, or Randolph had knowledge of the filing of the Bankruptcy Petition.[11]  *See* Singleton v. Abusaad (In re Abusaad), 309 B.R. 895, 898 (Bankr. N.D. Tex. 2004); Elbar Investments, Inc. v. Pierce (In re Pierce), 272 B.R. 198, 203 (Bankr. S.D. Tex. 2001) ("The stay is effective upon the filing of the case, regardless of notice.").

**3.      What was the Effect of the Post-Petition Foreclosure Sale Conducted in Violation of the Automatic Stay?**

The Court of Appeals for the Fifth Circuit has held that acts taken in violation of the automatic stay are "voidable rather than void." Sikes v. Global Marine, Inc., 881 F.2d 176, 179 (5th Cir. 1989); *see also* Picco v. Global Marine Drilling Co., 900 F.2d 846, 850 (5th Cir. 1990) ("[A]ctions taken in violation of an automatic stay are not void, but rather [ ] they are merely

---

[11] As noted in footnote 6 herein, the Debtor acknowledged at the Trial that Randolph did not receive notice of the filing of the Bankruptcy Petition prior to the foreclosure sale (Pretrial Order, p. 4). Moreover, as discussed, MSP and Priority entered into a settlement agreement with the Debtor prior to Trial and, as a consequence, the Debtor stated in the Pretrial Order that with regard to those defendants, the "issues regarding 'notice' of the automatic stay are moot." (Pretrial Order, p. 4). Finally, with regard to The Bank of New York, the Pretrial Order included a stipulation by The Bank of New York that the Debtor would "not assert any claim for compensatory damages, punitive damages, sanctions, attorney fees or costs against The Bank of New York . . . for allegedly knowing, willful, intentional, and malicious stay violation(s), or civil contempt as set forth in Plaintiff's Complaint." (Pretrial Order, p. 9). Thus, while notice of the Bankruptcy Petition would have been a relevant consideration as to the willfulness of any stay violation, it is not a relevant consideration as to *whether* the stay was violated.

voidable, because the bankruptcy court has the power to annul the automatic stay pursuant to section 362(d)."). Accordingly, "it is clear that such an action is invalid and of no effect unless and until the action is made valid by subsequent judicial action annulling the automatic stay." In re Abusaad, 309 B.R. at 899. Thus, in the matter before the Court, the foreclosure sale conducted in violation of the automatic stay is invalid unless the Court makes it valid by annulling the automatic stay.

**4.      Should the Court Annul the Automatic Stay?**

Bankruptcy courts have broad discretion with respect to whether to annul the automatic stay. In re Maxey, 2006 WL 3834218, *3 (Bankr. S.D. Tex. 2006); In re Cueva, 371 F.3d 232, 236 (5th Cir. 2004). Courts, however, are "cautioned to use this discretion sparingly because of the adverse impact that validation could have on other creditors who honored the stay." City Bank v. Industrial Bank Na (In re Brown), 2006 WL 1210789, *1 (5th Cir. 2006); *see also* In re Maxey, 2006 WL 3834218, at *5 ("This Court agrees that it should utilize its power to annul the automatic stay with hesitation.").

While the Fifth Circuit has not articulated the specific factors that should be considered by a bankruptcy court with respect to an annulment of the stay, other bankruptcy courts have taken into consideration (1) whether the creditor had actual or constructive knowledge of the bankruptcy filing, (2) whether the debtor acted in bad faith or is guilty of some inequitable conduct, such as abusive or repetitive bankruptcy filings, (3) whether grounds would have existed for modification of the stay if a motion had been filed before the violation, (4) whether the debtor has encouraged the creditor to proceed notwithstanding the stay or only asserts the stay when it is unsuccessful in the outcome of an action it allowed to proceed, (5) whether the denial of retroactive relief would result in unnecessary expense to the creditor, and (6) whether the creditor has detrimentally changed its

position on the basis of the action taken. *See*, e.g., In re Barr, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004); Blaylock v. Philadelphia Housing Auth. (In re Blaylock), 301 B.R. 443, 448 (Bankr. E.D. Pa. 2003); *see also* Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 24 (9th Cir. BAP 2003) (listing twelve factors bankruptcy courts may consider when determining whether to annul automatic stay); 3 Collier on Bankruptcy, ¶ 362.11[1] ( 15th ed. rev. 2006) ("[R]etroactive relief should be granted only in extraordinary circumstances, such as when a creditor acted without knowledge of the stay, under circumstances in which relief from the stay would have been available, and where the creditor changed its position in reliance on the validity of its action."). Yet, bankruptcy courts must be "[m]indful that such lists are capable of being misconstrued as inviting arithmetic reasoning, [and thus] we emphasize that these items are merely a framework for analysis and not a scorecard. In any given case, one factor may so outweigh the others as to be dispositive." In re Fjeldsted, 293 B.R. at 25.

The creditor seeking retroactive relief must first show the presence of circumstances warranting annulment of the stay, and the debtor then bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *See* § 362(g)(2); In re Barr, 318 B.R. at 599. Accordingly, the Court will first focus on whether Randolph has shown circumstances warranting annulment of the automatic stay. While Randolph demonstrated that he did not have actual or constructive knowledge of the Bankruptcy Petition, the Receipt (Tr. Ex. J) provided to him by MSP for payment of the $37,000 purchase price for the Property at the foreclosure sale states as follows:

> The sale will not be considered final until all requirements have been met and may be withdrawn based on a timely re-instatement and/or by an order of the Bankruptcy Court.

(Tr. Ex. J). Thus, even though Randolph did not have actual or constructive knowledge that the Bankruptcy Petition had been filed, he did receive notice that the foreclosure sale could be withdrawn based on an order of the Court.

Randolph did not demonstrate that the Debtor lacked good faith in filing her bankruptcy case, or that she was guilty of any other inequitable conduct, such as serial bankruptcy filings. Rather, the evidence showed that she filed her plan in good faith in an attempt to keep her family's home.

Randolph also failed to demonstrate that grounds would have existed to modify the stay. Randolph attempted to prove that the Debtor's income has decreased since the filing of her Bankruptcy Petition such that she cannot fund the Plan, and that she has not allocated sufficient funds to cover the costs of real property insurance, real property taxes, or gasoline such that the Plan is not feasible. Yet, the Plan provides for payment of the accumulated mortgage arrearage and the ongoing mortgage expense, and the Debtor testified that she generally has made the Plan payments when due for approximately one year, despite a decrease in income.[12] Moreover, the Debtor testified that the Property is insured through force placed insurance, and that although she did not itemize in her bankruptcy schedules a monthly expense for real property taxes, her siblings contribute yearly to the payment of those taxes. The Debtor further explained that because she works from home and uses her sister's car for errands, she incurs little gasoline expense. The Debtor, therefore, showed that her Plan is feasible and that she has and should be able to continue to make her Plan payments. The Debtor also acknowledged that certain real property taxes currently are owed, but testified that

---

[12] At the time of filing, the Debtor was caring for a disabled brother who contributed $250 per month toward the household income. The brother since has died and, consequently, the Debtor does not receive that money as additional household income.

she was ready, willing and able to pay those.[13]  Based on the Debtor's testimony, the Court likely would not have granted relief from the stay even had The Bank of New York sought such relief.

Furthermore, Randolph did not demonstrate that the Debtor had encouraged Randolph to proceed in any action notwithstanding the stay.  In fact, the evidence showed that after the foreclosure sale, Randolph contacted the Debtor to advise her that he had purchased the Property and desired to work out a rental agreement whereupon the Debtor advised him that she had an attorney and would not enter into any such rental agreement.  Moreover, when Randolph subsequently sent a survey crew to the Property, the Debtor's family instructed the crew to leave the Property.

Finally, Randolph did not demonstrate that denial of retroactive relief would result in unnecessary expense to him, nor that he has otherwise detrimentally changed his position. Randolph, who acknowledged that he previously had purchased foreclosed properties, testified that he incurred the following expenses:[14]

---

[13]  The Court finds that within ten (10) days of the date of the issuance of this Memorandum Opinion and Order, the Debtor should remit to the proper taxing authorities all real property taxes which are currently due and owing on the Property, and amend her bankruptcy schedules and Plan as necessary to provide a monthly allocation for payment of future real property taxes on the Property.

[14]  In his response to item (8)(C) of the Pretrial Order, which required a "separate statement for each item of damages claimed in a counterclaim," Randolph stated, "In the event the foreclosure sale is voided and Defendant Randolph loses his interest in the property, he seeks expectation damages in an amount sufficient to cover all of his losses sustained as well as reasonable expectation of future earnings, in an amount to be determined." (Pretrial Order, p. 7). However, Randolph did not file a counterclaim for any of the purported expenses he incurred nor present any legal authority for such a recovery.  Therefore, the Court will consider the expenses itemized above only in the context of weighing the factors regarding annulment of the automatic stay.

| | |
|---|---:|
| Time his staff invested in the effort to purchase the Property | $ 3,000 |
| Time with realtor and realtor's fee of 10% | 3,700 |
| Time with lenders | unspecified |
| Time at courthouse for foreclosure sale | unspecified |
| Time to obtain certified funds | unspecified |
| Payment of foreclosure costs | 37,000 |
| Title opinion fee | 257 |
| Survey crew | unspecified |
| Lost interest and lost opportunity costs on $37,000 | unspecified |
| Attorney fees incurred after learning of the bankruptcy filing | unspecified |

Thus, most of Randolph's expenses were incurred prior to the foreclosure sale, during the period in which he was conducting his due diligence with regard to the Property. Subsequent to the foreclosure sale, Randolph incurred the title opinion fee and the attorney fees for the litigation over title to the Property.

In the Court's opinion, Randolph did not incur unnecessary expenses which demonstrate that the automatic stay should be annulled. Randolph had purchased foreclosed properties on previous occasions, is an attorney, and should have understood that he was risking the time and the expense involved in the effort to obtain a foreclosed property. Moreover, the attorney fees Randolph expended following the foreclosure sale arose from his efforts to obtain title to the Property. Hence, they do not constitute unnecessary expenses for purposes of annulling the stay, but rather, expenses he incurred by choice. Accordingly, Randolph has not satisfied his burden of proving that extraordinary circumstances exist which would warrant annulment of the stay.

To the contrary, the Debtor has demonstrated that relief from the automatic stay should be denied. The Debtor proved that she filed her Bankruptcy Petition in good faith, that her Plan is feasible and that, consequently, relief from the stay likely would not have been granted had the foreclosure sale not been conducted, and that she did not encourage Randolph to continue his efforts with regard to obtaining the Property. Furthermore, in light of the Court's decision to deny

annulment of the automatic stay, the Court finds that the foreclosure sale was conducted in violation of the automatic stay and, therefore, is invalid and of no effect and should be set aside.[15]

## Conclusion

Based on the foregoing, the Court concludes that the Stay Motion is not well taken and should be denied, and that the Complaint is well taken and should be granted as set forth herein. To that end, the foreclosure sale conducted on May 17, 2007, is invalid and of no effect and should be set aside. Consequently, the Substitute Trustee's Deed dated June 27, 2007, conveying the real property located at 543 Yandell Road, Canton, Mississippi, to J. Peyton Randolph, II, is invalid and of no effect. Therefore, the Debtor shall retain whatever title, interest, and rights in the real property located at 543 Yandell Road, Canton, Mississippi, that she possessed as of May 16, 2007.

The Court further concludes that, within ten (10) days of the date of issuance of this Memorandum Opinion and Order, the Debtor should submit to the Court a Substitute Trustee's Deed dated June 27, 2007, which reflects the Deed Book and Page Number wherein the Substitute Trustee's Deed is recorded in the land records of the Office of the Chancery Clerk of Madison County, Mississippi. The Debtor also should submit to the Court a correct legal description of the real property located at 543 Yandell Road, Canton, Mississippi, within ten (10) days of the date of issuance of this Memorandum Opinion and Order.[16]

---

[15] Although the Court finds the automatic stay was violated, the Pretrial Order reflects that the Debtor no longer asserts that The Bank of New York had notice of the Bankruptcy Petition or that The Bank of New York willfully violated the automatic stay. The Court does not discern that the Debtor seeks any other relief against The Bank of New York and, therefore, none is granted.

[16] The Title Search Report (Tr. Ex. B), the Substitute Trustee's Deed (Tr. Ex. C), and the Deed of Trust (Tr. Ex. H), each include a legal description of the Property. However, the legal description of the Property contained in the Title Search Report differs from the Substitute Trustee's Deed and the Deed of Trust. Accordingly, the Debtor should provide the correct legal description of the Property to the Court.

In addition, the Court finds that within ten (10) days of the date of issuance of this Memorandum Opinion and Order, the Debtor should remit to the proper taxing authorities all real property taxes which are currently due and owing on the real property located at 543 Yandell Road, Canton, Mississippi. Finally, within ten (10) days of the date of issuance of this Memorandum Opinion and Order, the Debtor also should amend her bankruptcy schedules and Plan as necessary to provide a monthly allocation for payment of future real property taxes on the real property located at 543 Yandell Road, Canton, Mississippi.

Upon receipt of the Substitute Trustee's Deed and correct legal description required herein, a separate final judgment consistent with this Memorandum Opinion and Order will be entered by this Court in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

SO ORDERED,